## MARTIN v PENNSYLVANIA RD CO

Ohio Appeals, 5th Dist, Stark Co

Decided May 14, 1936

Burt, Kinnison, Carson & Shadrach, Canton, for appellee.

Amerman & Mills, Canton, for appellant.

### OPINION

By SHERICK, J.

The appellee's decedent, Gwendolyn Brinker, an eight year old girl, and her father and mother, while riding in a motor vehicle, were all killed in a grade crossing accident. An elder sister, the appellee herein, Lottie L. Martin, as administratrix, began this action for damages for wrongful death for and on behalf of herself and

another adult sister as the sole heirs and next of kin of the decedent. The award of the jury, upon which jugdment was entered, was for $1500.

At the end of the plaintiff's case and at the conclusion of all of the evidence the Pennsylvania Railroad Company moved for an instructed verdict in its favor. The overruling of these motions are the only errors complained of in this appeal, and it is asked that the cause not only be reversed but, that final judgment be here entered in its favor.

The proof establishes that the decedent possessed no income or estate; that she had been dependent upon her father and mother who supported her; that she was partially blind by reason of cataracts and was likely to have been always dependent upon some one for her support. It is further evidenced that the beneficiaries are adult married sisters, living separate and apart from their deceased sister; that they had never received anything from her and that the future prospect of so doing was remote. The appellee was the only heir at law who appeared at trial and was interrogated. During the course thereof, she testified as follows:

"Q Were there any circumstances, Mrs. Martin, in connection with the relationship that makes her death any financial loss to you or your sister? A. Well, she didn't leave us no expense or anything of that sort.

Q. No. I mean there 'were not any circumstances, were here, such that her going would cause you any financial loss, were there? A. No."

In conclusion on the facts it may be asserted that no proof was offered of any present pecuniary damage. The fact is that the quoted testimony negatives that fact. If any such loss was proved as a future and subsequent possible pecuniary damage it must repose upon inference and presumption that in the future they as next of kin would have financially profited had their sister not been killed.

As indicated by the author on death, 13 **Ohio Jurisprudence**, §§75, 76, 149 and 239, we are also unable to reconcile the Ohio authorities which should be dispositive of the query before us. We therefore propose to follow such legal theories as seem to us consonant with reason and logical conclusion.

It is the claim of the appellant that under Lord Campbell's Act, which finds its counterpart in Ohio in part in §10509-167, GC, actions for wrongful death for the benefit of collateral heirs can be predicated only upon definite proof, as a condition precedent to recovery, of actual pecuniary loss. It is further maintained that the doctrine of presumption does not exist in actions brought for the sole benefit of collateral heirs because no legal duty exists as against the deceased to care for them; and that in any case such a presumption is a rebuttable one and is only entertainable where there is an absence of proof of pecuniary loss. Evidence to the contrary may disturb the effect of a presumption. It may go further and counterbalance it, or it may entirely dispel it. The appellant points to the evidence quoted herein as positive proof to the contrary, which dispels any such presumption. On the other hand the appellee rests her case squarely upon the authority of **Grotenkemper v Harris, Admr., 25 Oh St 510**, which has frequently been quoted but never positively modified or disavowed. When the case is examined it becomes apparent that it is grounded upon the reason of Barron's Case, 72 U. S. (5 Wall.) 90, which is predicated upon the assumption that wrongful death statutes are "survival statutes" rather than new and independent causes of action; and upon the reason found in the general rule recognized in **Johnston, Admr. v Cleveland & Toledo Rd. Co., 7 Oh St 336, 70 Am. Dec. 75,** and found concisely stated in Atchison, T. & S F. Rd. Co. v Weber, 33 Kan. 543, at page 551, that:

"As a general rule, where the law gives an action for a wrongful act, the doing of the act itself imports a damage and even if no actual pecuniary damage may have been shown or suffered, still the legal implication of damage follows the wrongful act, and nominal damages at least may be recovered."

This rule's application finds reason and propriety in tort actions such as assault and battery or trespass. But may its effect be extended to wrongful death cases for the benefit of collateral heirs? Such is the conclusion reached in the Grotenkemper case, supra. But when later cases are studied, such as **Cincinnati Street Ry. Co. v Altemeier, Admr., 60 Oh St 10, 53 NE 300,** it becomes apparent that the court entertains a different conception of the legislative intent embodied in the wrongful death statute. This is a case wherein parents of a deceased minor child sought damages for

pecuniary loss. It was recognized that children are legally bound after reaching majority to support their parents if they are capable of doing so, and that parents are entitled to the earnings of their unemancipated minor children. Proof of the wrongful death in such case is supported by the presumption of pecuniary loss which arises from the right to earnings and the legal obligation for future parental care. It is such a "loss of some benefit or advantage which is capable of being estimated in money as distinguished from mere sentimental losses." 5 Sutherland on Damages (4 Ed.), 4857. The fact that proof of such special damage is difficult of production, or meager in amount, is not totally destructive of the logical presumption. But in the case of collateral heirs the presumption lacks the support of the reason ▆ found in the legal obligation existing between a child and its parent. At page 4945, Sutherland, supra, says that "no presumption of pecuniary loss arises in favor of collateral kindred." Reverting to the Altemeier case, supra, we find it stated in conformity to the more recent cases and greater weight of authority that the statute limits the damage to pecuniary injury which must be determined by the facts of the case and not merely by guess. It is concluded, at page 15, that:

"To warrant a recovery at all it must be shown by evidence that in the usual course of events of life the beneficiary would have received financial aid from the deceased had be lived, and the approximate amount of such aid."

It is also therein said, at page 16, "if no pecuniary loss is proven, the verdict should be for the defendant." It is therefrom apparent that the theory of the Grotenkemper case, supra, is departed from in that the reason adopted makes proof of pecuniary damage a condition precedent to the right of recovery and negatives even the thought of nominal damages allowed in some states. Doyle, Admr. v B. & O. Rd. Co., 81 Oh St 184, 90 NE 165, 135 Am. St Rep. 775, and Ochsner v Cincinnati Traction Co., 107 Oh St 33, 140 NE 644, support the theory of the Altemeier case. Fini, Admr. v Perry, 119 Oh St 367, 164 NE 358, briefly reported without syllabus, is also of interest. This was a collateral heir case, wherein dependent brothers and sisters sought damages for the wrongful death of a brother who had been contributing towards their support. We take it that the pleadings and the opening

statement were to the effect that the brothers and sisters were dependent upon the deceased. The court held it error upon these facts to direct a verdict upon counsel's opening statement for, as stated, the facts disclosed a "rebuttable presumption of dependency." We deplore the use of the phrase employed, for it might have been said with complete legal accuracy that an offer was thereby made to prove an essential element of proof required by the statute, to-wit, facts which established pecuniary loss to the surviving next of kin. The plaintiff was entitled to have his offer to prove taken in its most favorable light, that is, that he would prove that the collateral heirs were dependent upon the deceased brother. In the case we are now considering no proof was offered of pecuniary damage. In fact the appellee testified that she and her sister sustained no financial loss. If there was a presumption in the present action surely it was thereby dispelled. We think there was none under the state of facts before us. This court so held in Hartford, Admr. v Wirebaugh, 31 O.L.R. 163. This was a collateral death case of an improvident brother wherein no proof was made of pecuniary loss.

It is the judgment of this court that there is an inconsistency between the theory of survivorship and presumption ▆ and that of positive proof of pecuniary loss as a condition precedent to recovery in collateral kin cases. They are incompatible in the reason upon which they are builded, and antagonistic one with the other. The statute prescribes just what sort of damages a jury shall consider. Nominal damages are not mentioned. Collateral heirs have no right to a minor's earnings or to future support. The mere fact that brothers might inherit from him or receive gifts from him in the future is remote and speculative, and inimical to the expected assertion of the instinct within us to perpetuate the race, create the family and reward it, and not collateral heirs, with means of support or future estate.

We perceive and regret the harshness of the thought that this child's life, extinguished perhaps by another's negligent act, is of no monetary value to anyone. But to the members of this court it is equally abhorrent to take the property of a wrongdoer and give it to another who is not entitled to it. Lord Campbell's Act stands re-enacted in certain jurisdictions wherein survivorship rights are recognized and re-

covery allowed. The Ohio Legislature, however has not so prescribd.

The judgment of the trial court is reversed and vacated, and this court now enters the judgment which the trial court should have entered, that is, final judgment in appellant's favor.

Judgment reversed and final judgment for appellant.

LEMERT, PJ, and MONTGOMERY, J, concur.