Margaret Pollard Wente, Executrix of the Estate of Anna L. Pollard, Deceased, Appellant, v. Nellie Shaver, Respondent.—No. 38144.—169 S. W. (2d) 947.

Division One, March 2, 1943.

Rehearing Denied, April 6, 1943.

*Lashley, Lashley, Miller & Clifford* for appellant.

1144

*Karl P. Spencer* and *Harry S. Rooks* for respondent.

BRADLEY, C.—Action under the compensatory section of the death statute to recover $10,000 damages for the alleged wrongful death of Anna L. Pollard. At the close of plaintiff's case, the court gave a peremptory direction to the jury to find for defendant. Thereupon plaintiff took an involuntary nonsuit with leave to move to set the same aside. Motion to set aside was overruled and plaintiff appealed.

The cause was first filed in the circuit court of the City of St. Louis, and a nonsuit taken in that case. Thereafter, the cause was filed in the circuit court of St. Louis County, resulting in a nonsuit, as stated.

Deceased was struck and killed in St. Louis County on July 4, 1939, by defendant's automobile, driven at the time by her. At that time deceased resided with her daughter, plaintiff executrix here, in Richmond Heights, St. Louis County. Defendant also was a resident of Richmond Heights, St. Louis County. January 16, 1940, the cause was filed in the circuit court of the City of St. Louis, and process issued on the following day. The original summons was returned not served. April 3, 1940, alias summons was issued and served in the City of St. Louis on the following day. June 3, September 6, and September 7, 1940, respectively, defendant, limiting her appearance, filed in the St. Louis circuit court a motion to quash the alias summons and the return thereon, a plea in abatement, and an amended plea in abatement. All these were based on the alleged ground that the St. Louis circuit court did not have jurisdiction of the cause for the reason that both plaintiff and defendant were residents of St. Louis County. The motion to quash was overruled September 6, 1940, but the amended plea in abatement was sustained September 18, 1940, and on same day plaintiff took a voluntary nonsuit.

October 15, 1940, the cause was filed in the circuit court of St. Louis County. January 14, 1941, defendant filed a demurrer to the petition. The demurrer was directed to the proposition that the cause was, under Sec. 3656, R. S. 1939, Mo. R. S. A., Sec. 3656, barred by limitation because not filed within one year from the accrual of the cause of action. January 27, 1941, the demurrer was overruled and defendant filed answer on February 5, 1941. The cause went to trial on February 9, 1942, and plaintiff took the involuntary nonsuit at the close of her case next day.

These questions are presented: Did the petition filed January 16, 1940, in the circuit court of the City of St. Louis, fail to state a cause of action? and if so, was the situation the same as if no petition had been filed in that court? If the petition filed in the circuit

court of the City of St. Louis stated a cause of action, then did that court have jurisdiction of the cause, and if it did not, then did limitation run while the cause was there pending? Also, defendant says that the petition filed in the circuit court of St. Louis County did not state a cause of action, and that the evidence adduced did not make a prima facie case.

Sec. 3656, R. S. 1939, a part of the death statute, fixes the limitations in which to file suit at one year from the accrual of the cause of action, and then goes on to provide:

"That if any such action shall have been commenced within the time prescribed in this section, and the plaintiff therein take or suffer a nonsuit, or after a verdict for him the judgment be arrested, or after a judgment for him the same be reversed on appeal or error, such plaintiff may commence a new action from time to time within one year after such nonsuit suffered or such judgment arrested or reversed."

Defendant contends that the petition filed in the circuit court of the City of St. Louis wholly failed to state a cause of action, and that therefore, no action was commenced until the petition was filed in the circuit court of St. Louis County, which was more than one year after the cause of action accrued.

The petition filed in the St. Louis circuit court follows: "Now comes plaintiff, the sole surviving heir at law of Anna L. Pollard, deceased, and the duly appointed and acting executrix of the estate of Anna L. Pollard, deceased, and for a cause of action states that on the 4th day of July, 1939, Anna L. Pollard, deceased, was attempting to cross on foot from the north to the south side of Clayton avenue at or near its intersection with Ralph Terrace when, at said time and place, defendant so negligently and carelessly operated her automobile so as to cause it to run into, strike and fatally injure Anna L. Pollard, deceased; that as a result of said wrongful death plaintiff was damaged in the sum of ten thousand dollars ($10,000.00).

"Wherefore, plaintiff prays judgment against defendant in the sum of ten thousand dollars ($10,000.00) and costs."

Sec. 3652, R. S. 1939, Mo. R. S. A., Sec. 3652, a part of the death statute, fixes the order of recovery as follows:

"First, by the husband or wife of the deceased; or, second, if there be no husband or wife, or he or she fails to sue within six months after such death, then by the minor child or children of the deceased, . . . or, third, if such deceased be a minor and unmarried, . . . then by the father and mother, . . . or if either of them be dead, then by the survivor; or, fourth, if there be no husband, wife, minor child or minor children, . . . or if the deceased be an unmarried minor and there be no father or mother, then in such case suit may be instituted and recovery had by the administrator or executor of the deceased and the amount recovered shall be distributed according to the laws of descent. . . . . ."

1148

O'Donnell v. Wells, 323 Mo. 1170, 21 S. W. (2d) 762, was under the penalty section of the death statute. The petition, in part, is set out in the opinion as follows:

"Plaintiff, for her cause of action, states that on the 17th day of September, 1924, she was, by the Probate Court of the City of St. Louis, Missouri, appointed, and is now acting as administratrix of the estate of Elizabeth Thomas, deceased, who died a resident of St. Louis, Missouri, on the 28th day of July, 1924. . . .

"Plaintiff states that by reason of the death of said Elizabeth Thomas, her heirs, consisting of Gertrude Stellman, sister, and Gertrude O'Donnell, daughter, heirs capable of inheriting, have suffered financial loss and have been damaged in a large sum, to wit, the sum of ten thousand dollars."

It was contended that the petition in that case failed to state a cause of action because it did not exclude a right of action in the persons named in the first, second, and third provisions of the statute. In that case plaintiff argued that "the allegation that she was appointed administratrix" was, in effect, an allegation that "she was not a minor, for an administratrix must be 21 years of age"; that the petition showed the name of the daughter and mother to be different, and that this was equivalent to an allegation that the daughter was married, which, coupled with the allegation, in effect, that plaintiff was 21 years of age, was in effect, an allegation that deceased was not an unmarried minor; and that the words "consisting of" in the allegation, with reference to the heirs of deceased, excluded the possibility of heirs other than those named in the petition.

In ruling the point on the petition the court said that if the plaintiff's construction ▬▬ be allowed, still the petition did "not negative a surviving husband, who comes first (in right to sue) by legislative mandate." It was held that the petition did not state a cause of action, but the cause was remanded so the petition could be amended.

Lee v. St. Louis Public Service Co., 337 Mo. 1169, 88 S. W. (2d) 337, was by an administratrix under the penalty section to recover for the alleged wrongful death of Anna Morris. The plaintiff recovered judgment for $10,000. The petition at the trial was not attacked, but on appeal it was contended that the petition wholly failed to state a cause of action because it failed to allege that the deceased "left surviving, heirs capable of inheriting under the laws of descent and distribution." It was held that the petition, because of the absent allegation, failed to state a cause of action, citing Kirk v. Wabash R. Co., 265 Mo. 341, 177 S. W. 592; Johnson v. Dixie Mining & Development Co. (Mo. Sup.), 187 S. W. 1; Troll, Admr. v. Laclede Gas Light Co., 182 Mo. App. 600, 169 S. W. 337; Garbee, Admr. v. St. Louis-S. F. R. Co., 220 Mo. App. 1245, 290 S. W. 655; Colvin v. Gideon & N. I. R. Co. (Mo. App.), 200 S. W. 715. How-

ever, the reversal was not outright, but, following the ruling in Colvin v. Gideon & N. I. R. Co., supra, and Titus v. Delano et al. (Mo. Sup.); 210 S. W. 44, the cause was remanded so petition could be amended.

In the present case the allegation that plaintiff is the administratrix who must be at least 21, and the allegation that she is "the sole surviving heir", if not a mere conclusion, excludes all those, except possibly a husband, who have by the statute a prior right to sue over an administrator, and shows that some one capable of inheriting survives. And even though the allegation does not exclude a husband, the petition still could be amended as in the O'Donnell case, supra. Defendant, however, says that the allegation that plaintiff is the sole surviving heir, is a mere conclusion and must be disregarded in construing the petition.

In Stewart et al. v. Coshow et al., 238 Mo. 662, 142 S. W. 283, a will contest, the point was made that the petition was defective in not stating the degree of relationship plaintiffs bore to the testator. The petition stated that they were "next of kin and heirs at law" of the testator. The court said [238 Mo. l. c. 670] that "to say that they are heirs at law is a legal conclusion, but to say that they are next of kin is hardly a conclusion of law." As to whether one is an heir at law of another depends on his status under Sec. 306, R. S. 1939, Mo. R. S. A., Sec. 306, which provides:

"When any person having title to any real estate of inheritance, or personal estate undisposed of, or otherwise limited by marriage settlement, shall die intestate as to such estate, it shall descend and be distributed in parcenary, to his kindred, male and female, subject to the payment of his debts and the widow's dower, in the following course: First, to his children, or their descendants, in equal parts; second, if there be no children, or their descendants, then to his father, mother, brother and sisters, and their descendants in equal parts; third, if there be no children, or their descendants, father, mother, brother or sister, nor their descendants, then to the husband or wife; if there be no husband or wife, then to the grandfather, grandmother, uncles and aunts, and their descendants, in equal parts; fourth, if there be no children or their descendants, father, mother, brother, sister, or their descendants, husband or wife, grandfather, grandmother, uncles, aunts, nor their descendants, then to the great-grandfathers, great-grandmothers and their descendants, in equal parts; and so on, on other cases, without end, passing to the nearest lineal ancestors and their children, and their descendants, in equal parts."

In view of Sec. 306 it is quite apparent why the naked allegation that one is an heir at law of another is a mere conclusion, because such allegation would exclude no one designated under Sec. 306.

It is our conclusion and we so rule that the petition filed in the circuit court of the City of St. Louis was of sufficient validity to at least be amended, hence the situation is not the same as if no petition

at all had been filed until October 15, 1940, when the petition was filed in the circuit court of St. Louis County.

Did limitations run while the cause was pending in the circuit court of the City of St. Louis because that court did not have jurisdiction to entertain the cause? To support the contention that such is the case and that, therefore, the saving proviso of Sec. 3656 cannot be invoked defendant relies principally upon Conrad v. McCall, 205 Mo. App. 640, 226 S. W. 265, and Mertens v. McMahon (Mo. App.), 115 S. W. (2d) 180. The Conrad case was for damages for an assault made September 28, 1941, upon the plaintiff in Newton County, Missouri, by O. S. and T. D. S. McCall, brothers. At the time of the assault O. S. McCall and plaintiff resided in McDonald County, Missouri, and continued to reside there. T. D. S. McCall resided, at the time, in Newton County. December 1, 1915, 14 months after the assault, plaintiff filed suit in Newton County against the two Mc-Calls, but T. D. S. McCall left that county some four months before the suit was filed and never returned. Original, alias, and pluries summons was issued in the suit filed in Newton County, but each was returned non est. October 12, 1916, the Newton County circuit court dismissed the cause "for failure of plaintiff to prosecute same." Thereafter and on January 2, 1917, more than two years after the assault, plaintiff filed suit in McDonald County against O. S. McCall. Both plaintiff and O. S. McCall had all the time resided in the same town in McDonald County, and plaintiff knew all the time that O. S. McCall resided in that town.

Sec. 1016, R. S. 1939, Mo. R. S. A., Sec. 1016, fixes the limitation for an action for damages for assault at two years, and Sec. 871, R. S. 1939, Mo. R. S. A., Sec. 871, so far as pertinent here, provides that "suits instituted by summons shall, except as otherwise provided by law, be . . . in the county within which the defendant resides, or in the county within which the plaintiff resides and the defendant may be found." Under the facts in the Conrad case it was held that the statute of limitation was not tolled by the suit filed in Newton County.

The St. Louis Court of Appeals, in the Mertens case, supra, followed "the holding and reasoning" of the Springfield Court of Appeals in the Conrad case. In the Mertens case the court stated that the defendant in that case cited cases from other jurisdictions showing that "the doctrine" of the Conrad case "has been applied under various states of facts and statutes similar to our statutes." The cases referred to are: Southern Flour & Grain Co. v. Simmons, 49 Ga. App. 517, 176 S. E. 121; O'Neil v. Eppler, 99 Kans. 493, 162 Pac. 311; Erickson v. Macy, 236 N. Y. 412, 140 N. E. 938; McClendon et al. v. Hernando Phosphate Co., 100 Ga. 219, 28 S. E. 152; Morrissey v. Hurst, 107 Okla. 1, 229 Pac. 431; McFarland v. McFarland, 151

Ga. 9, 105 S. E. 596; Cherry v. Falvey, 188 Ark. 827, 68 S. W. (2d) 98; Vann v. Missouri, K. & T. R. Co., 110 Kans. 799, 205 Pac. 607.

We have examined each of these cases and neither of them discloses facts like the facts in the present case. It will be noted that in the Conrad case and the Mertens case the plaintiff *knew* that the defendant did not reside in the county where the suit was filed.

In the present case plaintiff cites, among other cases, Gaines v. City of New York, 215 N. Y. 533, 109 N. E. 594; Pittsburgh, C. C. & St. L. Ry. Co. v. Bemis, 64 Ohio St. Rep. 26, 59 N. E. 745; Tompkins v. Pac. Mut. Life Ins. Co., 53 W. Va. 479, 44 S. E. 439; Little Rock, M. R. & T. Ry. Co. v. Manees, 49 Ark. 248, 4 S. W. 778; Smith et al. v. McNeal et al., 109 U. S. 426, 3 S. Ct. 319, 27 L. Ed. 986.

The Gaines case, supra, was to recover for damages to a car. The limitation was one year. Suit was filed in the City Court within the year, but that court did not have jurisdiction of actions against New York City, and the cause in that court was dismissed for lack of jurisdiction. The suit was thereafter filed in the proper court, but was filed more than one year after the cause accrued, and the one year statute was invoked by the defendant. The plaintiff invoked a tolling statute as follows:

"If any action shall have been commenced within the times respectively prescribed in the three first articles of this title, and judgment be given therein for the plaintiff, and the same be arrested or reversed on error, the plaintiff may commence a new action, from time to time, within one year after such judgment arrested or reversed; and if the cause of action survive or descend to his heirs, or survive to his executors or administrators, they may in like manner commence a new action, within the time herein allowed to such plaintiff."

The cause reached the New York Court of Appeals, which held, in an opinion by Judge Cordoza, that the tolling statute was applicable. In the opinion it is said: "A suitor who invokes in good faith the aid of a court of justice, and who initiates a proceeding by the service of process, must be held to have commenced an action within the meaning of this statute, though he has mistaken his forum."

The Pittsburg, C. C. & St. L. Ry. Co. case, supra, was for false imprisonment, and the limitation was one year. The cause was first filed in the federal court, but it turned out that the federal court did not have jurisdiction because there was no diversity of citizenship after a defendant had been discharged. The cause was dismissed in the federal court and thereafter filed in the state court, but not within one year from the accrual of the cause. There was a saving or tolling one year statute, and it was held that such statute was applicable. In the opinion the court said:

"It must be conceded that the weight of authority supports the proposition, as a general rule, that a dismissal of a former suit for want of jurisdiction in the court in which it is brought is such a failure as will not constitute a bar to another action; and it seems fairly well established that such a dismissal will leave the plaintiff, by favor of the remedial statute where such exists, to pursue his remedy further, even though by the general statute of limitations his action would be barred."

The Tompkins case is similar to the Pittsburg, C. C. & St. L. Ry. Co. case, supra.

In Little Rock, M. R. & T. Ry. Co., supra, the ruling is stated succinctly in the headnote [4 S. W. 778] as follows: "Plaintiff sued a railroad company in a justice's court for $125, for injury to his horse. He recovered the whole amount. On appeal to the supreme court the judgment of the justice, and that of the circuit court affirming it, were vacated, and the case dismissed, on the ground that the justice's jurisdiction of actions for injury to personal property was limited to the jurisdictional amount of $100. Plaintiff brought a new action in the circuit court, for the same cause, less than a year after the dismissal, but more than a year after the cause of action accrued. Such actions are barred, unless brought within one year after the injury is inflicted. Mansf. Dig. Ark., Sec. 5540. Held, that in view of Mansf. Dig. Ark., Sec. 4497, which provides that where suit is brought within the period of limitation, and plaintiff suffers a nonsuit, or judgment is arrested on a verdict in his favor, or reversed on appeal or error, he may sue again within one year from the time of such nonsuit, arrest of judgment, or reversal, the dismissal of his first action in the supreme court saved plaintiff from the limitation, and a plea of the statute in the second action was bad."

In the Smith case, supra, it appears that suit was brought in the federal court in Tennessee to recover 40 acres of land. The limitation for such a suit, under the Tennessee law, was seven years. The suit was brought within that time, but was dismissed for want of jurisdiction "by reason of the omission in the pleadings of a jurisdictional fact which actually existed." Within one year after dismissal the plaintiff filed another suit in the same court and against the same parties and to recover the same land. The second suit was filed more than seven years after the cause of action accrued. A saving statute provided:

"If the action is commenced within the time limited, but the judgment or decree is rendered against the plaintiff upon any ground not concluding his right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested, or reversed on appeal, the plaintiff, or his representatives and privies, as the case may be, may, from time to time, commence a new action within one year after the reversal or arrest."

It was held that the pendency of the first suit tolled the seven year statute. In ruling the case the court said: "We are of the opinion, therefore, that the plaintiffs in error are entitled to the benefit of article 2755 of the Code of Tennessee, for their judgment in the first suit was not upon any ground concluding their right of action, nor have they been guilty of such negligence or carelessness in the bringing of their first suit as should exclude them from the benefit of the said article."

It appears in the present case that Mr. Clifford, attorney, who handled, for the firm, plaintiff's case in court, testified that plaintiff first came to one of the Mr. Lashleys of the firm; that he (witness) was thereafter advised that suit was to be filed; that he wrote a memorandum of the basic facts that were given to him and, according to the custom of the firm, prepared and filed a "skeleton or general petition"; that at the time he prepared the petition he checked the Greater St. Louis telephone directory, which came out about a month prior; that "there appeared the name of Nellie Shaver, M. D. (defendant is a doctor), 4932 Maryland, which is generally a resident district of the City of St. Louis" (the statement that the district was a resident district was stricken); that no other address appeared for Nellie Shaver in the directory; that he "noted, in looking back at the yellow section" (advertising section of the directory, we infer) under physicians, that the name Nellie Shaver appeared there and that only the 4932 Maryland address appeared.

On cross examination, Clifford said that there was "a second telephone number listed (in the directory) under Dr. Shaver, with the direction that if the first number didn't answer then to call Jefferson-5858. Jefferson-5858 was a medical exchange number for doctors, but Clifford said that he did not know that. The telephone directory was shown to Mr. Clifford and this occurred:

"Q. Will you look at that, please, and see if you can find Nellie Shaver listed there? A. Yes, I find it here. Q. How is it listed, Mr. Clifford? A. It says 'Nellie Shaver, physician, 4932 Maryland, R-207.' Q. What does that R-207 indicate to you? A. Well, I don't know. Q. Does that indicate to you that it might be room 207? A. It may be. Q. And what does that 'r' Clayton, mean? A. That would indicate—that probably means the residence. Q. And her residence is listed in that directory as being in Clayton, is that what it indicates to you? A. Well, I suppose that would, as I understand that; that is incorrect, however. Q. But that indicated to you her residence was in Clayton. A. No, I don't say it indicates that to me; that is what it may be. Q. I understand you didn't consult any city directory? A. No, and as I say, I never knew that this woman lived in Clayton and my understanding is that she never lived in Clayton."

Sec. 1026, R. S. 1939, Mo. R. S. A., Sec. 1026, is similar to the saving proviso of Sec. 3656, supra, and provides:

"If any action shall have been commenced within the times respectively prescribed in articles 8 and 9 of this chapter, and the plaintiff therein suffer a nonsuit, or, after a verdict for him, the judgment be arrested, or, after a judgment for him, the same be reversed on appeal or error, such plaintiff may commence a new action from time to time, within one year after such nonsuit suffered or such judgment arrested or reversed; and if the cause of action survive or descend to his heirs, or survive to his executors or administrators, they may, in like manner, commence a new action within the time herein allowed to such plaintiff, or, if no executor or administrator be qualified, then within one year after letters testamentary or of administration shall have been granted to him."

In Wetmore v. Crouch, 188 Mo. 647, 87 S. W. 954, the court, speaking of what is now section 1026, supra, said [188 Mo. l. c. 652]: "A broad view of this section—a view that takes in as well the remedy to be advanced as the mischief to be retarded and that does not deal in mere 'mint and anise and cummin,' but goes to the weightier matter of the law—shows that it was in the legislative mind that a litigant should have a day in court—a trial on the merits of his cause. If the proceedings fell short of that, if the judgment was arrested, or if for plaintiff and reversed on error or appeal, or if some interlocutory matter supervened and thwarted a trial on the merits, then the prescribed period of the statute of limitations, ex gratia, should be extended for one year as atonement for the miscarriage of justice."

So far as appears from the cases cited and from our own research, the saving statutes have been applied to nonsuited litigants who have, by innocent mistake, filed their cause in the wrong forum. It is true, that the motion to quash the summons and return filed in the St. Louis circuit court June 3, 1940, was filed a month before the expiration of a year from the date decedent was struck and killed, but this motion was not disposed of until September 6, 1940, and there is nothing to show that plaintiff or Mr. Clifford actually knew, prior to the expiration of the year, the grounds upon which the motion was based. Mr. Clifford, in his direct examination, did not mention this motion and he was not asked about it on cross examination.

The tendency in this present day is definitely towards the elimination of obstacles invoked to escape trial upon the merits of a cause. The negligence here, if any, is slight, and not such as to justify denying to plaintiff the benefit of the tolling statute. In the situation, we rule that ■■■■ the saving proviso in section 3656 is applicable.

It is not necessary to deal at length with defendant's contention that the petition filed in the circuit court of St. Louis County did not state a cause of action. Our ruling, supra, as to the petition filed

in the circuit court of St. Louis, and the ruling, infra, on the sufficiency of the evidence, in effect, dispose of this complaint adversely to defendant.

Defendant makes the point that plaintiff's evidence did not show that anyone was pecuniarily damaged by the death of plaintiff's decedent. In the brief defendant says: "The evidence merely showed that decedent was rendering plaintiff domestic services in exchange for room and board. It did not show the value or extent of either."

Bagley v. City of St. Louis, 268 Mo. 259, 186 S. W. 966, was under the compensatory section of the death statute. In that case the court used this language:

"There was nothing in the evidence which tended to show that any of the beneficiaries received any pecuniary assistance from the deceased during his life; hence all they were deprived of was a probability of a share of the estate left by him at his death, and under the facts in this record the probable amount of such accumulation was the only matter left to the jury to consider. To arrive at an intelligent verdict, they should have calculated his probable earnings for his expectancy of life, considering his age, ability and qualifications to labor, and general habits, and should have deducted therefrom what would have been probably used and diverted by him to his personal expense and cost of living, and should have ascertained the present value of the residue. Sedgwick on Damages (9th Ed.), vol. 2, Secs. 574a, 579; Tiffany, Death by Wrongful Act (2d Ed.), Sec. 159." In the Bagley case it is stated that the trial court should have directed a verdict for the plaintiff for nominal damages.

In King v. City of St. Louis, 250 Mo. 501, 157 S. W. 498, is this [250 Mo. l. c. 513]: "The rule is that for every actionable injury there is a corresponding right to damages and such an injury arises whenever a legal right of plaintiff is violated. 'If there is no inquiry as to actual damages, or none appears on inquiry, the legal implication of damage remains . . . , therefore nominal damages are given.' Suth. on Dam. (3rd Ed.), Sec. 9; 13 Cyc. 14."

In McCullough v. W. H. Powell Lumber Co., 205 Mo. App. 15, 216 S. W. 803, l. c. 807, the test of plaintiff's right to maintain an action under the death statute is stated as follows: "Were the persons named in the petition as the beneficiaries, so far as concerns the question of damages, pecuniarily injured by the death of the deceased, or would they have pecuniarily benefited by the continuing life of deceased? If these beneficiaries were pecuniarily injured by the death of the deceased, then plaintiff may maintain this cause of action; otherwise, he cannot. Recovery will not be sustained for the death of an adult, where there is no evidence that the beneficiary was receiving any pecuniary benefits from the deceased at the time of his death. Dependency, as used in cases falling under our damage act, means dependency in fact, and not necessarily a strict legal depend-

ency, making the deceased legally liable to furnish support. 6 Thompson on Negligence, Sec. 7049; Bowerman v. Lackawanna Mining Co., 98 Mo. App. 308, 71 S. W. 1062. The fact of pecuniary benefit does not require definite and exact proof; but wherever there exists a reasonable probability of pecuniary benefit to one from the continuing life of another, however arising, the untimely extinction of that life raises a presumption of pecuniary injury. 6 Thompson on Negligence, Sec. 7050; McKay v. New England Dredging Co., 92 Me. 454, 43 Atl. 29; Baltimore Railroad Co. v. State, 63 Md. 135.''

The judgment should be reversed and the cause remanded. It is so ordered. *Dalton* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.